## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,

           Plaintiff,

                                      Crim. Case No: 19-20821

v.                                 Hon. Nancy G. Edmunds

D-7 Hussein Wazne,

           Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Lured by the promise of financial gain, defendant Hussein Wazne joined his friend Daniel Haidar in the pharmacy business, opening Wyandotte Rx in October 2016. There is consensus between the parties that Wazne did not initially realize what he was getting himself into, nor appreciate that the business was fraudulent. Wazne is a carpenter by trade, and prior to this he had done custom cabinetry and finish carpentry work for a number of the other defendants. Eventually though, Wazne came to understand that there were no actual pharmacies and that he was participating in a very significant scheme to defraud.

Wazne's partnership with Haidar continued through the name change of Wyandotte to Royalty Rx in July 2017, and the opening of several other pharmacies (or would-be pharmacies): Safe Pharmacy in November 2017, Canton RX and Wayne RX in May 2018, and Sam Pharmacy RX in September 2018. In total, these pharmacies obtained more than $5.7M in fraudulent coupon reimbursements, although a significant portion of that fraud was either unforeseeable to Wazne or occurred before he had actual knowledge of the scheme.

While there is no evidence that Wazne submitted any of the coupon claims himself, he nonetheless enabled the scheme to continue by lending his good name and reputation to the opening of multiple fraudulent entities. He did this while knowing that they were not being used for legitimate purposes, and collecting a cut of the proceeds.

Considering his overall culpability and various mitigating circumstances, the government respectfully recommends that the Court impose a custodial sentence at or near the bottom of the guidelines.

## I.    Factual Background & Procedural History

The United States largely adopts the timeline of relevant case events, the description of the charge to which Defendant Wazne has

pleaded guilty, and the statement of the offense conduct detailed by the Probation Department in the Revised Presentence Investigation Report (PSR) dated March 15, 2023.

In supplement to the above, the government wishes to highlight its understanding of one of the term's of Wazne's plea agreement; i.e., the $500,000 payment of restitution due at the time of sentencing. Prior to his plea, Wazne provided the government with certain information about his own finances and the operation of his business. Having reviewed that information, the government acknowledges that he did significant, legitimate carpentry work for multiple defendants in this case. Incidentally, this legitimate work also served—largely unwittingly—to launder significant proceeds from the various pharmacies.

Given the material and labor expenses involved though, Wazne's personal profit from the conspiracy was lower than that of other defendants. Accordingly, the parties agreed to the $500,000 figure as a liquidated sum, with the understanding that Wazne had the financial means to make the payment and would do so at or before sentencing.

Curiously, Wazne represented to the Probation Department during the Presentence Investigation that he has essentially no assets, and significant liabilities (*See* PSR ¶59-61).

Wazne requested one previous adjournment to give him more time to obtain the funds in question, and the government agreed. He recently sought a second adjournment to which the government was opposed.  In his motion seeking the most-recent adjournment, it was revealed he has retained (or is in the process of retaining) the services of "Mr. Doug Passon a nationally recognized expert in issues relating to sentencing." Based on Mr. Passon's website (https://dougpassonlaw.com/services/), it appears that he specializes in "sentencing mitigation videos."  Although the government does not have any specific information about the arrangement between the defendant and Mr. Passon, it is believed that services such as those provided by Mr. Passon can be quite expensive.

In light of the foregoing, the Court may wish to inquire further as to whether Wazne's financial disclosure to the Probation Department was fully accurate, especially in light of his failure to provide banking records and his prior representations to the government as to his ability to pay the negotiated sum of $500,000.

4

The government still expects to receive the full $500,000 at or before sentencing and will pursue all available remedies if the funds are not paid in full.

## II.  Sentencing Guideline Calculations and Relevant 3553(a) Factors

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered to impose a sentence "sufficient, but not greater than necessary" to promote the objectives of sentencing: Those objectives include the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from additional crimes by the defendant, and provide the defendant with needed training, care, or correctional treatment. To those ends, the Court should consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need to provide just punishment and adequate deterrence; (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities (nationwide) among defendants with similar records found guilty of similar conduct; and (7) the need to

provide restitution to victims.

But sentencing starts with the calculation of the Guidelines range in order to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, while avoiding unwarranted sentencing disparities[.]" *United States v. Booker*, 543 U.S. 220, 264 (2005). Indeed, "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. . . . The more out-of-range sentences that judges impose, the more disparity there will be." *United States v. Elliot*, 327 F. App'x 540, 549 (6th Cir. 2009).

A.    The Sentencing Guidelines

Consistent with the parties' Rule 11 Plea Agreement, the Probation Department in the Presentence Investigation Report ("PSR") calculated a total offense level of 18, and a criminal history category of I—this yields a range of 27 to 33 months in custody.

The government agrees with this calculation.

B.    Section 3553(a) Factors

In this case, the most significant factors are the seriousness of the offense, and the need to deter Wazne and others from engaging in fraud. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (C).

(1) *Nature and Circumstances of the Offense and
the History and Characteristics of the Defendant*

Although his role was more limited than that of other defendants,
including the fact that he did not personally submit false claims, the
defendant opened multiple fake pharmacies in his name.  Collectively,
those pharmacies obtained nearly $6M in fraudulent returns (again, to
be clear, a significant portion of that loss was either not foreseeable to
Wazne or occurred prior to his knowledge of the fraudulent nature of
the businesses).  Wazne also participated in the same "open-close"
recycling of locations that the more culpable defendants relied upon, in
that he converted Wyandotte Pharmacy to Royalty Pharmacy.

While co-defendant Daniel Haidar and fugitive co-defendant
Mohamad Abou-Kohdr are the reason that Wazne became part of the
scheme in the first instance, Wazne should nonetheless be held
responsible for his own choices:  staying in the conspiracy and
knowingly continuing to open multiple fake pharmacies. A custodial
sentence of some length is appropriate.

### (2) *Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment*

The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment are factors that weigh in favor of a custodial sentence.

Put simply, this scope of this fraud scheme is staggering—a total of more than $65M in fraudulent receipts.  In a co-defendant's sentencing memorandum, undersigned counsel previously compared an earlier estimate of the total loss to the gross domestic product of Tuvalu, a small island nation in the South Pacific.  Without belaboring the point, this was a ridiculous amount of fraud.

The scheme was incredibly sophisticated, exploiting multiple loopholes in the prescription billing industry and leveraging the stolen PII of dozens of prescribing physicians. Although Wazne's role was limited, his participation allowed the operation to continue.

This scheme needs to be treated like the sophisticated business operation that it was, and the participants need to be punished accordingly.  Including Wazne.

(3) *The Need for Deterrence*

The above considerations impact another § 3553(a) factor – the
need to deter such conduct in the future. Sentencing in the federal
system has long contemplated the ability to provide both specific and
general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir.
2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006).

Deterrence, specifically in the white-collar crime context, is
extremely important. It is impossible to measure whether individuals
are deterred by criminal prosecutions and sentences. In general,
individuals that are deterred from committing crime do not come into
contact with the courts. But common sense tells us that deterrence is
valuable, and that low or non-custodial sentences, especially in white
collar cases where the loss amount is staggering, serve to embolden
other potential criminals to break the law.

Crime trends support this commonsense conclusion. In the last
several years, there has been a clear trend involving organized crime
gangs transitioning their criminal enterprises from trafficking in
controlled substances to white collar crime. Financial crimes are

equally, if not more, profitable than selling drugs and the penalties are, in general, substantially lower.

In addition, the criminal conspiracy in this case was large. To date, 11 defendants have been indicted. But many more were involved in opening the pharmacies and submitting claims, and some have not yet been (or may never be) charged. Those individuals that had a less central role in the scheme and have thus far evaded prosecution may be tempted to fill the void left behind by these defendants. If Wazne and his co-defendants do not go to jail and serve significant sentences, their acquaintances and associates will surely see no reason not to commit large scale pharmacy fraud. Consequences are crucial to deterring crime.

This deterrence principle also necessarily extends to the less-culpable defendants who, although not calling the shots, give the enterprise a veneer of legitimacy.  Fraud schemes like this one evade detection in part via the recruitment of straw or nominee owners, whose good name and reputation deflects the scrutiny that might otherwise be drawn by individuals who acquire multiple pharmacies in short succession. Wazne's sentence should serve as a warning to others

considering engaging in this type of fraud—to any degree.  Some period
of incarceration is necessary for appropriate deterrence.

      (4) *The need to avoid unwarranted sentencing disparities*
          *among defendants with similar records found guilty of*
          *similar conduct*

Five of Wazne's co-conspirators have already been sentenced:

- On January 4, 2022, co-conspirator Bahia Zeidan was sentenced by the late Honorable Arthur J. Tarnow to one day in custody (with credit for time served), following a plea to one count of wire fraud. Zeidan's guideline range was 27 months to 33 months.  Zeidan was recruited to be a straw owner of one pharmacy, after having been a pharmacy tech; she expressed immediate remorse.

- On March 15, 2022, co-conspirator Ali El-Moussawi was sentenced by this Court to 36 months in custody, following a plea to conspiracy.  El-Moussawi's guideline range was 41 months to 51 months. He was the partial owner of six pharmacies, and did significant billing himself.

- On August 15, 2023, co-conspirator Nabil Chehadeh was sentenced by this Court to 72 months in custody, following a plea to conspiracy. Chehadeh's guideline range was 63-78 months. He owned five pharmacies.  Chehadeh was sentenced in absentia and remains a fugitive.

- On January 23, 2023, co-conspirator Linda Fawaz was sentenced by this Court to 3 years' probation, following a plea to one count of wire fraud.  Fawaz's guideline range was 21-27 months.  Fawaz was a straw owner of one pharmacy.  At the direction of Hussein Abdallah, Fawaz did the majority of the paperwork necessary to open new pharmacies; she also did billing for multiple pharmacies and supervised Berro's billing.  Fawaz was incredibly remorseful, all-but-withdrew from the conspiracy in mid-2019, and ultimately testified against Berro.

- On May 15, 2023, co-conspirator Suzan Berro was sentenced to one day in custody with credit for time served, followed by two years' supervised release. Berro's guideline range of 51-63 was significant and likely overstated her personal culpability; in recognition of that, the government recommended a sentence of 36 months.

On paper, Wazne appears quite similar to defendant Bahia Zeidan, and the Court may be inclined to impose a similar sentence. In contrast to Zeidan, it is important to recognize that Wazne opened significantly more pharmacies and received significantly more in gross returns (and unknowingly facilitated in the trade-based laundering of much of those funds in the process).

Further, according to the U.S. Sentencing Commission's Judiciary Sentencing Information Network (JSIN):

> During the last five fiscal years (FY2017-2021), there were 707 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 18 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 633 defendants (90%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 19 month(s) and the median length of imprisonment imposed was 20 month(s).

(https://jsin.ussc.gov/analytics/saw.dll?Dashboard, last visited May 17, 2023). Given that the vast majority of all defendants in this cell received a custodial sentence of some length (90%), the government

believes that a custodial sentence at or near the bottom of the guidelines is appropriate for this defendant.

(5) *Restitution, Fines, and Forfeiture*

The defendant's crimes caused financial losses to numerous private companies.  However, given Wazne's role in the offense (essentially a straw or nominee owner who was also used —largely unwittingly—by other members of the conspiracy to launder funds via the provision of legitimate construction services), the government agreed to a liquidated figure for purposes of restitution:  $500K to be paid at the time of sentencing.

In order to facilitate the distribution of those funds, the government would ask the Court to impose a restitution order as follows:

| Victim | Restitution Amount |
|---|---:|
| Abbvie US LLC | $4,612 |
| Allergan Inc (now AbbVie) | $33,683 |
| Astellas Pharma | $22,496 |
| Astrazeneca | $ 84,092 |
| Bausch Health | $ 20,796 |
| Bristol-Myers Squibb | $6,475 |
| Eli Lilly & Co | $47,492 |
| Galderma | $11,640 |
| Gilead Sciences | $49,052 |
| Glaxosmithkline | $13,602 |

| | |
|---|---|
| Horizon Pharma | $3,207 |
| Horizon Therapeutics | $6,854 |
| Janssen Pharmaceuticals | $12,800 |
| Medicis | $107,969 |
| Merck | $28,434 |
| Mist Pharmaceutical | $ 65 |
| Novartis | $18,608 |
| Otsuka America | $16,461 |
| Sanofi US | $3,756 |
| Takeda Pharmaceuticals | $7,906 |
| **TOTAL**: | **$500,000** |

These figures are derived from information provided by the third-party processors who serviced Safe Pharmacy, based on what they understood to be the losses to the underlying pharmaceutical companies for the programs that they administer.

Moreover, to the extent defendant is now either unwilling or unable to comply with the upfront payment promised in his plea agreement, the government would urge the Court to consider the degree to which the defendant's non-payment (and his less than fulsome disclosure of assets) reflects on his overall acceptance of responsibility, and factor that into his sentence accordingly.

## III.   <u>CONCLUSION</u>

The United States respectfully requests that the Court impose a custodial sentence of some length at or near the bottom of the guidelines and enter an order of restitution as described above.

Respectfully Submitted,

DAWN N. ISON
United States Attorney

<u>s/Ryan A. Particka</u>
Ryan A. Particka
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9635

Date: May 17, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 17, 2023, I filed the foregoing document using the Court's CM/ECF system, which will send notice to counsel of record, Amir Makled and Keith Corbett.

*s/Ryan A. Particka*
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9635
Ryan.particka@usdoj.gov

Date: May 17, 2023